IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RENAISSANCE LEARNING, INC.,

                Plaintiff,            MEMORANDUM AND DECISION

v.

                                         11-cv-166-slc

DOE NO. 1,

                Defendant.

---

Plaintiff Renaissance Learning, Inc. filed this civil action for declaratory judgment of non-infringement after receiving a letter from a company called IP Navigation Group ("IP Nav"), in which IP Nav invited Renaissance to engage in licensing discussions regarding the patent or patents of IP Nav's "client," an alleged patent holder that IP Nav has refused to name. On March 15, 2011, after being granted permission to do so by this court, Renaissance served IP Nav with a subpoena duces tecum that asked IP Nav to identify the patent holder and the registration numbers of the patents referenced in the IP Nav letter. IP Nav responded by filing a motion to quash in the United States District Court for the Eastern District of Texas, asserting that this court's order permitting the subpoena is void for lack of subject matter jurisdiction.

In a memorandum opinion and order issued November 1, 2011, the district court in Texas found that IP Nav had raised "substantial questions" regarding this court's jurisdiction, but that it was more appropriate fo this court to answer those questions. Mem. Opinion and Order, dkt. 16, Exh. 1, at p. 5-6. Accordingly, that court stayed a decision on the motion to quash and directed Renaissance to provide this court with a copy of its memorandum and order and copies of the parties' briefs on the motion to quash, which addressed the question of subject matter jurisdiction. *Id*.

Thus, the purpose of this memorandum is to determine whether this court has subject matter jurisdiction over Renaissance's suit for declaratory judgment. As explained below, I conclude that it does.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff Renaissance Learning, Inc. [Renaissance] is a corporation organized and existing under the laws of the State of Wisconsin with a principal place of business in Wisconsin Rapids, Wisconsin. It is a leading provider of technology-based school improvement and student assessment programs for K-12 schools. Renaissance makes, uses, offers for sale and sells online testing and evaluation programs, including a program called STAR. The STAR assessments—including STAR Reading, STAR Math, and STAR Early Literacy—are the most widely used computer-adaptive tests in K12 schools. Nearly 19 million STAR assessments were taken in school year 2009-2010 alone.

The identity of defendant Doe No. 1 [Doe] is unknown to Renaissance and unknown to this court. Renaissance is aware of Doe's existence only by virtue of the acts of IP Nav, Doe's agent. Renaissance received a letter from IP Nav dated February 22, 2011, titled "Proposal to Negotiate Patent License." Complaint, dkt. 1, Exh. A. In the letter, IP Nav identified itself as a "global intellectual property advisory firm" and claimed that it was retained by an unnamed holder [Doe] of "valuable patents and related intellectual property directed to the fields of online testing and evaluation." IP Nav asserted that "[a]n analysis of [Renaissance Learning's] products shows that your company makes, uses, or sells products or services that would benefit from a license to certain of our client's patents." IP Nav continued:

> We would very much welcome the opportunity to enter into constructive discussions with your company to determine whether we can agree to a mutually acceptable patent license agreement or determine that you are not using our client's patents. We are focused on addressing these issues without the need for costly and protracted litigation. Of course, if our discussions result in the conclusion that the patents do not read on your products, no license would be necessary and we would immediately conclude licensing discussions.
>
> We are prepared to commence discussions with you or your representative at your earliest convenience. At our first meeting, we intend to identify specific patents and provide information outlining the basis for the infringement claims against your products or services. We would also welcome any information or analysis that you may wish to provide rebutting the claims. We are also prepared to set forth our client's basic licensing structure for your consideration at that initial meeting.
>
> In order to proceed, we request that you agree to confidentiality and not to institute litigation against our client on the basis of our client's request to seek amicable licensing discussions. We have enclosed a one page proposed form of agreement addressing these issues.
>
> As we stated above, our client's preferred approach is to conclude licensing discussions without resorting to litigation. We hope you share this objective.

The letter advised that IP Nav's client had agreed to keep this offer open for ten days.

Enclosed with the letter was a one-page "Confidentiality and Forbearance Agreement." The Agreement provided that the parties would keep confidential any information disclosed by the other during patent license negotiations. It also contained a "Forbearance" provision providing that each party agreed that "neither the request to engage in licensing discussions, nor the existence of licensing discussions under this Agreement, nor information disclosed during the course of those discussions under this Agreement" would be the basis for the institution of legal

proceedings against the other party and further, that Renaissance agreed that it would not bring an action for Declaratory Judgment against IP Nav during the term of the agreement.

Renaissance did not sign the agreement. Instead, on March 4, 2011, it filed the instant suit for declaratory relief against the unidentified patent holder, asking for a declaration that Renaissance has not infringed and is not infringing any valid claims of the defendant's patents.

## ADDITIONAL BACKGROUND FACTS

According to IP Nav's website, the firm specializes in "monetizing" patents through licensing, sale, transfer or litigation. http://ipnav.com/Our-Solutions/solutions. The website touts its founder and CEO, Erich Spangenberg, for his "aggressive pursuit of patent infringers." *Id*.

Before filing the instant lawsuit, counsel for Renaissance called the author of the letter, Matthew DelGiorno, and asked him to identify the name of the patent owner and the patents referenced in the letter. DelGiorno declined to do so.

## MEMORANDUM

> "The *Duck Test* holds that if it walks like a duck, swims like a duck and quacks like a duck, it's a duck."
>
> *Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009)

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In cases requesting a declaration of patent non-infringement or invalidity as in other cases, there is no bright-line rule for distinguishing those that satisfy the "actual controversy" requirement from those that do not. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Until the decision in *MedImmune*, the Court of Appeals for the Federal Circuit had applied a two-part test, that required "an explicit threat or other action by the patentee which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit." *See, e.g., Teva Pharmaceuticals USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324, 1333 (Fed. Cir. 2005). In *MedImmune*, the Supreme Court rejected the reasonable-apprehension-of-suit test, explaining that the relevant inquiry in determining whether a claim for declaratory relief presents a justiciable case or controversy is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 & n.11.

Following *MedImmune*, the Federal Circuit has declined to define "the outer boundaries" of declaratory judgment jurisdiction, but it has articulated general principles derived from that case that apply to patent cases. In *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007), the court explained that when it is the declaratory judgment plaintiff's conduct prior to the existence of a license that is at issue, "declaratory judgment jurisdiction generally will not arise merely on the basis that [the] party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." On the other hand, said the court, declaratory judgment

jurisdiction may be met where the patentee "takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Id*. at 1381. The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) (citations omitted).

The instant lawsuit was triggered by IP Nav's letter to Renaissance, which is the only known pre-complaint contact–indirectly and anonymously–between Doe and Renaissance. In general, a communication from a patent owner to another party that merely identifies its patent and the other party's product line is insufficient to establish declaratory judgment jurisdiction. *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). At the same time, however, a party cannot defeat declaratory judgment jurisdiction merely by "the stratagem of a correspondence that avoids the magic words such as 'litigation' or 'infringement.'" *Id*. The operative question is whether the patent owner engaged in "conduct that can be reasonably inferred as demonstrating intent to enforce a patent." *Id*. at 1363.

Some might look at the silky wording of IP Nav's letter to Renaissance and see a close question; this court, however, sees an unmistakable and intentional warning shot across the bow. The *actual* message is pellucid to any patent litigator, so that IP Nav's use of apophasis is disingenuous and unavailing. Remember Mark Antony's funeral oration in *Julius Caesar*? That's how an experienced business executive or lawyer would view IP Nav's assertions that "we are focused on addressing these issues without the need for costly and protracted litigation" and "our client's preferred approach is to conclude licensing discussions without resorting to

litigation. We hope you share this objective." The implied "*or else!*" oozes from this letter like lye from lutefisk. To paraphrase an observation attributed to Anton Chekhov, you don't hang a gun over the mantle in Act I unless someone is going to fire it in Act III.

Doe enlisted IP Nav–a specialist in "monetizing" patents for its clients–to communicate with Renaissance on its behalf. The fact that such correspondence was sent anonymously through a hired gun proud of its "aggressive pursuit of patent infringers" reasonably would invoke "a different reaction than would a meet-and-discuss inquiry by a competitor, presumably with intellectual property of its own to place on the bargaining table." *Hewlett-Packard Co.*, 587 F.3d at 1362. The letter makes clear that Doe or IP Nav already has gone to the expense of analyzing Renaissance's products and has concluded that there was a "basis for . . . infringement claims against [Renaissance's] products or services." Further, IP Nav's refusal to identify its client or the patents at issue, along with the unnecessarily tight ten-day response deadline, reasonably can be viewed as components of a strategy to preclude Renaissance from obtaining the facts it needed to file a declaratory judgment action; from this approach one also could reasonably infer that Doe already was prepared to litigate if necessary and intended to retain for itself the choices of when and where to file its lawsuit if Renaissance would not play ball. Then there is demand for a one-sided forbearance agreement that required that Renaissance not file suit but imposed no reciprocal obligation on Doe. All of this reasonably implies that Doe intends to enforce a patent and that a real controversy exists.

True, some factors could be viewed as cutting in the opposite direction. IP Nav's letter did not identify any patents or specific claims, and it contained language suggesting that Doe had not determined conclusively whether it had a basis to assert its patents against Renaissance.

IP Nav Letter, dkt. 1, Exh. A, noting that if discussions "result in the conclusion that the patents do not read on your products, no license would be necessary and we would immediately conclude licensing discussions." Further, Renaissance does not suggest that it asked IP Nav if Doe would be willing to amend the forbearance agreement to require the same forbearance from Doe; had Renaissance done so and been rebuffed, then a clearer case for jurisdiction would exist. *Cf. Hewlett-Packard*, 587 F.3d at 1363 (noting that defendant failed to accept terms of plaintiff's 120-day standstill proposal).

      I am persuaded, however, that these facts do not outweigh the other facts just mentioned. Indeed, as the Federal Circuit recognized in *Hewlett-Packard*, 587 F.3d at 1358, after *MedImmune*, one would not expect a competent lawyer seeking to obtain a license for his client to send correspondence to an alleged infringer that identified specific claims or explicitly alleged infringement. To the contrary, one would expect exactly the sort of letter that IP Nav sent here: a letter that fails to provide any details about the patent or claims at issue and is carefully worded to avoided any express threat of litigation.

      Does this mean that any written request, no matter how innocuously worded, by a patent owner to engage in licensing discussions gives rise to declaratory judgment jurisdiction? Perhaps. *See SanDisk*, 480 F.3d at 1384 (predicting that after *MedImmune*, jurisdiction will lie "in virtually any case in which the recipient of an invitation to take a patent license elects to dispute the need for a license and then to sue the patentee.") (Bryson, J., concurring in the result). But it is not necessary to go to that extreme in this case, because there are sufficient indicia in IP Nav's letter and the circumstances surrounding it to establish that Doe was taking affirmative steps to enforce its patents.

In sum, the facts and circumstances, viewed through the lenses of common sense, experience and the case law, establish that IP Nav's meticulous attempt to create plausible deniability of any intent by Doe to sue Renaissance is futile and unpersuasive. The actual and intended message to Renaissance is loud and clear: negotiate a license with Doe quickly and confidentially or expect Doe to sue you. This case presents a sufficiently real and immediate controversy to establish declaratory judgment jurisdiction.

## DECISION

This case presents a justiciable case or controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Accordingly, the court has subject matter jurisdiction over the claims raised in the complaint.

Plaintiff Renaissance Learning, inc. is directed to provide a copy of this decision to the court presiding over IP Nav's motion to quash in the Eastern District of Texas.

Entered this 29th day of November, 2011.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge